Good morning, ladies and gentlemen. Our first case for argument this morning is Komatsu Mining Company v. Columbia Casualty Company. Mr. Moore. Good morning, and may it please the Court. This appeal presents questions of Wisconsin insurance law on which the insurers bear the burden. And to prevail, the insurers must show that the insurance policy language at issue, the so-called bump-up exclusion, unambiguously removes coverage for every part of the $20.8 million loss at issue. At page 43 of their brief, the insurers acknowledge what the plain language of the exclusion states, that the settlement encompasses more than an inadequate consideration claim, then the portion of the settlement payment not attributable to the inadequate consideration claim may be covered. At page 45, they then concede, as they must, that the eight securities actions at issue quote, of course contained allegations other than the payment of inadequate consideration, unquote. So we say that it follows from that that JOI is entitled to coverage for at least part of its $20.8 million loss. Reversal is thus required. And two questions remain for the Court. Is JOI entitled to coverage for all or only part of its $20.8 million loss? And if the latter, what part? And second, is there a tribal issue of fact on this record over whether CNA's blanket denial of coverage, their refusal to acknowledge that there's $1 of covered loss, was made in bad faith? On the coverage issue, by its terms where it applies at all, the exclusion removes coverage not for any claim, but for an amount of money alone. It says loss shall not include any amount, that's money, of any judgment or settlement of that part of a claim alleging that the price paid or proposed to be paid for corporate acquisition is inadequate. So the exclusion by its plain terms contemplates that there may be multiple different parts of a claim and different amounts in any settlement or judgment, some covered and some not. And only the amount of a settlement that the insurer shows is for that part of a claim that is a, quote, inadequate consideration claim is excluded, every other amount remains covered. And if I can use an illustration, I think you'll understand our argument quite clearly on this. Because there's two parts to the claim. There's the part that's colored red, at least in part. And so I would ask you to think of the exclusion this way. We're going to substitute the red package for the defined term inadequate consideration claim. So the provision, when you put the language together, says loss shall not include any amount of any settlement for that part of the package that's colored red. So what does that tell us? For the exclusion to apply at all, we first must have a package that is at least partly colored red, right? Any settlement for that part of the package that's red. So we first must have a package that's at least partly colored red. And if so, there's no coverage for any amount allocable to that part that's red. And we have two arguments. Our first argument is we certainly don't have a package here in these eight lawsuits that's 100% red. And that's common ground, as I've said. Was part of the original lawsuit concerned anything other than the price to be paid in the acquisition? So Your Honor, I think we have to separate between allegation and relief. The touchstone of liability under the federal securities laws that were pleaded in seven of the eight cases is misrepresentation. That's what the federal securities laws are concerned about. And so it was about misrepresentation. There was a claim for attorney's fees. There was a claim for injunctive relief, declaratory relief, and recissory damages. What is there any part of the claim was unrelated to the price paid in the acquisition? That's a concrete question, and I'd appreciate a concrete answer. So if we look at the Duncan amended complaint, it pleaded on damages. It pleaded for both recissory damages and compensatory damages. I'm not asking whether it asked for an injunction. I want to know what part is unrelated to the compensation paid in the acquisition. So the Duncan, and the answer is the recissory damages as well as the basis for liability is not at all related to the amount paid. Because recision, right, recissory damages are the opposite of the amount paid for the transaction. What are, excuse me, sorry, what are recissory damages? It seems like an oxymoron. So recissory damages, and this goes to the heart of the point, Your Honor, and remember that CNA, the primary insurer, acknowledged the prospect of coverage on the Duncan amended complaint as pleaded before they flip-flopped. What's a recissory? And recissory damages are damages that are a substitute for the equitable remedy of recision where recision is impractical. And they are not the amount, to answer Judge Azenberg's question, they're not the amount that... You're still not answering my question. I have asked, in as many different ways as I know how, what part of the complaint is unrelated to a contention that there was inadequate compensation. I'm not asking whether you had 53 different claimed remedies as a consequence. I'm asking what part of the claimed wrong is unrelated to a shortfall in compensation. The answer, Your Honor, is that both counts of the Duncan amended complaint do not depend on and are unrelated to that because... They are unrelated to it? They're unrelated. The complaint alleges, for example, that evaluation showing potential entitlement to higher compensation was not revealed. It alleges that the management at Joy Global was not more diligent in seeking higher compensation. There are lots of allegations that are related to compensation. The question is whether there was anything that was unrelated to compensation. And the answer is yes, Your Honor, because if they had not pleaded... The federal securities laws, as this court has held multiple times, the Supreme Court has held multiple times, the Second Circuit has held multiple times, are about nondisclosure. They police representations in the securities markets. They do not police price. And the damages, rescissory damages, and this is critical to answer Judge Hamilton's question as well as yours, rescissory damages are the opposite of price-related damages. They are damages that the plaintiff seeks, Your Honor, to be put in the position they would have been in if the transaction had never occurred. I just wish you would understand that I am not asking what remedy the complaint sought. Complaints don't have to seek any remedies. I'm asking about the theory of liability. Is there any part of the theory of liability that is unrelated to the adequacy of the consideration? Yes. This is the last time I will ask. I can't imagine any other ways of asking.  It is absolutely not responsive. And, Your Honor, the answer is that Section 14 and Section 14A in Rule 15... I'm not asking you to give me a lecture about the statute. I'm asking you to discuss the complaint. Maybe this already violates my statement that this is the last time I will try. The basis for liability, Your Honor, that's pleaded in the complaint is misrepresentation and material omission and what's in the proxy statement. I give up. You should move on to something else. You are just not even addressing my question. Mr. Moore, is there an industry standard form for so-called bump-up exclusions? There are varieties of expressions of it. In 2011, when this particular language was introduced, they represented in the process that they were not changing the scope of the prior exclusion, and that was based on the... My question obviously has to do with your attempt to put in expert testimony to the effect that the language doesn't actually mean what it says. I don't think we're saying that with respect, Your Honor. What we're saying is that you have to understand. Let's just look at the plain language. Put aside the context. Where does the limitation to buyers only come from? The way we say you read that, that's a reasonable policyholder-friendly reading, which is what Wisconsin law requires, is you look at securities claim, and securities claim looks at both the buyer and sale side of the transaction. Then when you look at the exclusion, the exclusion only looks at the buyer side. No, it's written in the passive voice, correct? It's written... Well, yes, it's written in terms of paid or proposed... It doesn't identify who's paying, who's receiving, right? It does not identify that, but... So let me go back. Your theory seemed to be, if I understood it correctly, that you could put on expert testimony to the effect that there, in essence, is an industry-wide understanding of what this language means, right? Yes, well, employers, health, the Wisconsin Supreme Court case, this court's decision, Sunoco, Williston on contract, section 34-5, all say that usage and industry understanding of a provision are relevant to take into account. But we think, Judge Hamilton, that we prevail on this point as a matter of plain language, because it's a partial exclusion, and it's only targeting the part of the... It's only targeting any amount of any settlement of that part that's in adequate consideration. And what I'm suggesting to Judge Easterbrook, but not to his satisfaction, as I appreciate, is that the claims are federal securities claims. They would have been tossed out of court... They couldn't have been filed as federal securities claims if they were about price. If they were about price, the federal Securities Court and this court and the Second Circuit have held multiple times, the federal securities laws police disclosures. Actually, we have expressly rejected the way the Second Circuit treats this issue. You don't want to cite the Seventh and the Second in the same breath, because we are at different polls on that subject. But I think in a different way, Your Honor, not with respect to the touchstone of liability, with respect to the non-disclosure point. And my point is that if this claim were only about price, we wouldn't be here. We're here because these are federal securities claims. So let me ask you if I could, Mr. Moore. If I understand it, your theory is that this bump-up exclusion really only applies to appraisal rights under Delaware law, right? Yes. So under your theory, there's no coverage for claims about an honest disagreement about the value of the acquisition target or in a freeze-out merger, right? But there is coverage if your directors and officers are accused of fraud. Yes. That seems like an odd... That's how DNO insurance works. It's exactly how DNO insurance works. So if the insurer is being asked to pay part of the economic cost of the transaction, and that's the only thing that's alleged, that's not something that's irrational for a buyer to do, to try to lay off part of the cost of an insurer if it has coverage that would do that. But that's not what insurance is for. Insurance is for insuring against alleged wrongful acts. And that's the touchstone. If you look, this is Joint Appendix 577, the definition of claim, which is incorporated into the definition of inadequate consideration claim. And the district court and the insurers get this wrong, and this is very important. And it goes to the part of point. The definition of claim is any written demand for monetary damages or non-monetary relief, or it can be a civil proceeding, either one, but it can be just any written demand, alleging a wrongful act. And wrongful act is a defined term. And wrongful act includes misleading statements, omissions, misstatements, errors, breaches of duty. The point is that that's what DNO insurance covers. It incurs the alleged wrongful act. But you're saying, in essence, honest errors are excluded. Honest errors in valuing the dishonesty, it's a question of whether the only thing that's being alleged is price and not a wrongful act. And the wrongful act, the answer to Judge Easterbrook's question, is that the wrongful act being alleged is misrepresentation and nondisclosure. That's the touchstone of liability under the federal securities laws. It was not price. And even the district court didn't say it was price. The district court said that that was the result, that was the byproduct of the allegations of false and misleading statements. If I may, I'll preserve what I have left for rebuttal. You have 30 seconds. Thank you. Mr. Simpson. Good morning. May it please the Court. I want to start with the most important, one of the most important issues here, which is the cardinal principles of insurance contract interpretation. It goes to the question that Judge Hamilton asked of Mr. Moore. The cardinal principle of insurance contract interpretation, any contract interpretation, are the words of the contract. Here are the words of the policy. A court looks at those words in the context of the contract and gives them their natural and ordinary meaning. If in doing that the intent is unambiguous, that is the end of the inquiry. You don't go to respond again to Judge Hamilton's question. You don't bring in experts to talk about what some other company did 25 years ago in policies issued to different insurers with different language. And that's what Joy Global is asking for here. They're asking the court to apply what their experts contend is some industry understanding that contradicts the actual words of the insurance policy. An insurance policy they agree to represented by one of the leading brokers in the world. So the issue then is to look at the language, the inadequate consideration provision, look at the case, and say does it apply. And there I think it's important to step back and look at the nature of the claim. This goes to Judge Easterbrook's question about what's alleged, if anything, other than inadequate consideration. Mr. Bailey, the lawyer who represented them, they put in a declaration from him and he really explained well what was going on and why these cases are often now in federal court. Traditionally plaintiff's attorneys had brought these claims in Delaware State Court and they alleged there was a flawed sales process. And as a result of that flawed sales process, the acquisition was at too low a price and we should, our clients, the shareholders, should get as compensation the difference between the fair value and the acquisition price. They got some bad results in Delaware State Court and so they were looking for another forum and they came to federal court. They're talking about the same alleged flawed sales process. So what are they alleged now under 14A? They allege you failed to disclose that you had a flawed sales process that our clients should, the fair value, and the inadequate consideration. It's the same substance. They're simply saying you didn't tell us about the flawed process rather than directly the flawed process itself. And if you look at the language of the inadequate consideration provision, there's not a thing that would suggest the legal theory matters. What matters is does the claim allege that the price or consideration paid or proposed to be paid is inadequate. That's the core of the claims here, the 14A claims. Misrepresentation, yes, that's a wrongful act. What's the result of the misrepresentation? The misrepresentation is about the sales process and the only harm of that. It's not at all clear. One reason why I commented on the difference between the law of the Second Circuit and the law of the Seventh is that in the Second Circuit you can make a claim about a flawed disclosure of the inadequacy of price. That's the doctrine of Goldberg against Meridor. This circuit has expressly rejected the holding of Goldberg against Meridor. And I wonder whether under Harris Bank, the complaint shouldn't have been dismissed under 12b-6 almost before service of process. That may well be. And I think for the insurance coverage aspect, the question is what was they, Joy Global decided to pay $20 million to settle the case and so there was never a ruling on the motion. There was a motion to dismiss that was pending at the time of settlement. We don't know whether the court would have granted it or not, but as your Honor indicated, it may well have been granted. The point for the insurance coverage is what was alleged and the theory was you failed to disclose that you had a flawed sales process. The misrepresentations themselves had to do with not disclosing projections that made the company more valuable than what the shareholders were led to believe. So that's the nature of the claim and that's why it's all tied to the inadequate consideration. Mr. Simpson, I'm not sure I've got the timeline exactly clearly in my mind on this case, but it certainly looks as if all of these were known losses at the time the parties were agreeing to renew the DNO case. I wouldn't say known losses, your Honor, but it was known that we're very, very likely there were going to be claims. Didn't know exactly which claims or what kind of claims and the timing was Columbia Casualty had committed to issue a policy with a binder. It had a contingency about a change. And that's when they negotiated. They, at that point, expected claims to be made. Now, Mr. Bailey's declaration points out they weren't necessarily going to be these claims or only these claims. He notes in his declaration one type of claim they discussed might come up is there are often allegations of accounting irregularities that are discovered in the due diligence process on an acquisition. So what they ended up doing was, as the briefs explained, CNA, Columbia Casualty, gave the insured option, basically. You can extend your current policy or we'll issue the new policy, but we don't want you to give notice under the old policy. Basically saying we don't want two policies exposed here, but you'll get whatever coverage the policy provides in either event. And there wasn't a significant change in the terms or conditions. Right. But the model of the 14A claim that you described was pretty clearly foreseeable, right? Yes. Yes, it was. And so we've got parties as sophisticated as you're going to ever find in a high-dollar commercial transaction here. Yes, sir. And in that context, really the issue, the claims are going to be, you know they're going to be claims, almost certainly. You don't know exactly what the claims are going to be. Maybe this type is likely, but other types are also possible. You've already got a policy in place. And so the insured could give notice of a potential claim and lock in coverage under that old policy. And if they had, we'd be exactly where we are, no change in coverage. Or they could get the new one. The only concern the insurer had was we don't want to be exposed under both, which is certainly understandable. And Mr. Bailey also testified there was nothing misleading done in those discussions that led to Joy Global deciding to purchase the new policy rather than give notice under the old policy. Sounds to me like a pretty high-stakes poker game at that negotiating table. I misstated. Sorry, it sounds like a pretty high-stakes poker game at that negotiating table. Yes, and it was a known circumstance. And if you look, and the reason is it's not as though Joy Global, there's some suggestion in the brief about, well, maybe they could have gone out and bought from somebody else. Well, no one's going to sell a policy at this kind of price with known claims coming if they're not already on the risk. They already had coverage. They just gave notice of potential claim. They had locked in their coverage. And that's why you get the renewal policy at the same premium. And the runoff is at no higher price than they would have paid for an extended reporting period. So that was the issue. Do you want the old policy or the new policy? And then we'll deal with the coverage. In terms of the other elements of the inadequate consideration provision, and this came up in the earlier questioning, consideration paid or proposed to be paid. As Your Honor's question indicated, there's nothing that says by which side. It's a generic statement. The answer to this in terms of, and this goes also to the industry standard allegation, if you look at one of the cases that Joy Global cites, Gensign, that includes an inadequate consideration provision that refers to consideration paid by the insured is the acquirer. Because that's what the policy says. That shows that when the intent is to limit it in that way, that's what the party said. Likewise, the reference to an entity. It's a generic an entity. It doesn't say which entity. And if you look at this policy, again, cardinal principle of interpretation, look at the entire entity and the insured entity. And given that, when you say an entity, the logical, only logical deduction is that means any entity. The other provision I point to, and again, this is something that Joy Global cites in its brief, is the definition of securities claim, which refers to purchase or sale rather than just purchase. Well, if you look at that provision, that definition, it refers to purchase or sale of the insured entity. So first of all, it shows that when you mean the insured entity, you say it. And there you have to refer to both sides of the transaction, buy and sell, because you're talking about the one entity. If you only had purchase of securities of the insured entity, then you wouldn't pick up a sale of the insured entity. So that provision actually shows why our interpretation is correct. Finally, I want to get to that part of language. And here, Mr. Moore referred to the red package. This is a bright red package that is red and only red. There can be cases where that's not the case. That's why it says that part of it. There could be a lot of accounting that's mixed in. There could be other things. But if you look at this case, and if you look at particular at the Duncan amended complaint, all eight of them are about nothing but inadequate consideration. The allegations in all of them are, you didn't disclose. They seem to be related to inadequate consideration, though they're dressed up in or failure to disclose materials bearing on a higher valuation, and so on. Yes, Your Honor. The question I was trying to ask Mr. Moore without success is whether there was any part of the complaint that is unrelated to the amount of consideration. No, is our answer. I'm sure that you would say no. But I can explain if Your Honor would like. I didn't want to surprise you with that answer. But I can explain. That's why I was asking this question of Mr. Moore rather than you. I knew your answer. But the reason the answer is no is that the only, you have to allege lost causation, and the only alleged harm in that complaint, you can read it, no one can read it and see any alleged harm other than the price we got for our shares, $28.30, was too low. There is not a suggestion anywhere. In the prayer for relief, they asked for compensatory and or rescissory damages. As you indicated, Judge Hamilton, rescissory damages is something of an oxymoron. I don't know what it is, but if they were... It's damages in lieu of rescission. You can then try to figure out what that might possibly be, but the definition is easy. Yes, exactly. And the amended complaint didn't ask for rescission. And in this context, whatever you call them compensatory or you call them rescissory, it's the difference between the fair value and the purchase price, because that's the only thing that's identified anywhere in the complaint. That's what the stipulation of settlement indicates was the basis. That's all this was about. So if they were rescissory, they're still measured by the inadequate consideration. So it's a bright red package. That part, that's all there is. The only other point I would mention is on the attorney's fees. There was a suggestion in the reply brief that the defendants pay those in the Duncan case. That's not accurate. If you look at the stipulation of settlement, it provides that the settlement amount, this is at the Joint Appendix 499, the settlement amount is the principal amount of $20 million to be paid by the company, and it's in exchange for the release of the claims. So it's in exchange for the release of the inadequate consideration claims. And then it goes on. No attorney's fees, just as you would expect in a class action. The plaintiffs can ask the court for an award, which is what they did, and their award came out of the settlement fund, and the settlement stipulation expressly provides that the defendants, in no event, this is at JA 502, in no event shall defendants or their related parties bear any responsibility for any such fees, costs, or expenses. So it's perfectly clear these attorney's fees were paid by the plaintiffs out of their recovery, and that recovery was distributed, the net recovery, distributed pro rata to the shareholders because it represented inadequate consideration for their shares. That proves the point again. That's why it's distributed pro rata to the plaintiffs for their shares because it's compensation for inadequate consideration. Unless there are any questions, I see my time is about up. Thank you, Mr. Moore. Thank you. Sorry, thank you, Mr. Simpson. Mr. Moore, we will bump up your time to one entire minute. Thank you, Your Honor. I'm concerned that Mr. Simpson has taken us away from the language of the policy. The language doesn't exclude any settlement amount that's paid for any lawsuit, the purpose of which that relates to, that concerns or includes allegations in a complaint concerning inadequate consideration. It excludes amount, dollars, that are allocable to that part of a settlement that relates to an inadequate consideration claim. The Duncan amended complaint, Judge Easterbrook, from its very first paragraph, says that it's alleging that the case arises out of false and misleading proxy statement. The final proxy woefully failed to provide full and fair disclosures. As a result of the misleading proxy, uninformed joint global shareholders voted in favor of the acquisition. This is all of page 43 of our brief. The point is... The complaint would be adequately pleaded under Goldberg against Meridor in the Second Circuit. Of course, this circuit has rejected the Goldberg rule. I understand, but it takes me to the rescission point, Your Honor, and the answer to that question is in Ray Orchard Enterprises, which is the Delaware Chancery Court, rescissory damages are the opposite of inadequate consideration damages. They are damages that are a substitute for rescission to put you back in the place you would have been in if you'd been informed and if you hadn't sold. And they're not judged from the date at which the transaction happens. They're judged from a later point, which can be the point of the judgment or an intermediate point. It's a different measure of damages. It's a different type of relief. The plaintiff attorney fees are different. I think we have your position. Thank you, Your Honor. Thank you. The case is taken under advisement.